IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TIKEILA RUCKER, RACHAEL SPRIGGS, DAMON CURRY-MORRIS, AMBER SHERMAN AND LAJUANA ABRAHAM, <br><br> Plaintiffs, <br><br> v. <br><br> SHELBY COUNTY BOARD OF EDUCATION, CAROLYN JACKSON, in her official capacity as Chief of Safety and Security for the SHELBY COUNTY BOARD OF EDUCATION, <br><br> Defendants. | Case No. 2:23-cv-02358-SHL-cgc |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants Shelby County Board of Education ("SCBOE") and Carolyn Jackson, in her official capacity as Chief of Safety and Security for the Shelby County Board of Education's Motion for Summary Judgment Against Plaintiffs Tikeila Rucker, Rachael Spriggs, Damon Curry-Morris, Amber Sherman, and Lajuana Abraham, filed May 31, 2024. (ECF No. 56.) Plaintiffs filed their response on June 28, 2024. (ECF No. 58.) Defendants replied on July 26, 2024. (ECF No. 61.)

Plaintiffs previously sought a preliminary injunction to enjoin Defendants from banning them from attending SCBOE meetings and coming onto its properties. (ECF No. 8.) The Court held a hearing on that Motion on July 13, 2023 (ECF No. 30), and denied it on August 4, 2023 (ECF No. 38). That Order explained that, at that point, Plaintiffs did not show a strong likelihood of prevailing on their claims. (ECF No. 38 at PageID 414.) (Id.) However, it also

explained that "[w]hether a plaintiff's ban from school board property is constitutional is a highly fact intensive inquiry that requires a court to examine the plaintiff's conduct, the board's response, and whether the board's response is justified in light of the severity of the plaintiff's conduct, i.e., whether it is narrowly tailored to serve the significant government interests of preserving order at board meetings and ensuring the safety of those present." The Court concluded that "[t]here remain questions of fact surrounding many aspects of this case." (Id.) Now, even with a fully developed record, genuine issues of material facts remain. Because they do, and as described in more detail below, the Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND[1]

This case involves events that took place at the May 9, 2023 SCBOE meeting and in its wake. (ECF No. 58-1 at PageID 754.) [2] One of the topics addressed at the meeting was SCBOE's ongoing efforts to hire a superintendent. (Id.) Plaintiffs, who had been critical of the SCBOE's superintendent search process, attended the meeting and had the opportunity to speak during the time set aside for public comments. (Id. at PageID 754–55.)

Under the SCBOE's rules governing public comments, "[s]peakers are asked to refrain from using names of personnel or names of persons connected with the school system, particularly when lodging a complaint." (ECF No. 56-10 at PageID 673.) Under the policy, "[t]he Chair shall have the authority to terminate the remarks of any individual who is disruptive

---

[1] Unless otherwise noted, these facts are undisputed and are taken from the Parties' undisputed material facts.

[2] In support of their Motion for Summary Judgment, Plaintiffs filed two video exhibits. (ECF No. 57.) One is the entirety of the May 9 meeting and the second is narrated security footage capturing the discharge of the sound alarms, which is described in more detail below. The briefing on the motion relies on the video footage, as do the Parties' statements of undisputed material facts and the responses thereto. This Order relies on it as well.

or does not adhere to Board rules." (Id.) During the May 9 meeting, Spriggs made a statement referencing Shelby County's interim superintendent. (ECF No. 58-1 at PageID 755.) Spriggs was warned about the rule violation, and referenced the name of the interim superintendent a second time. (Id. at PageID 756.) The SCBOE Chair then told Spriggs to conclude her remarks and cut off her microphone. (Id.)

Spriggs remained at the podium with Rucker nearby, and Curry-Morris and Sherman joined them. (Id. at PageID 756–57.) Security personnel sought to have Plaintiffs take their seats and briefly made physical contact with Curry-Morris. (Id. at PageID 757–58.) Curry-Morris asserts that a school resource officer grabbed and assaulted him. (Id. at PageID 758.) Later, Curry-Morris addressed the meeting from the podium, claimed that the SCBOE's superintendent search had been a farce, criticized SCBOE's leadership, and stated "[s]o, look at yourselves and look at the people. Because you've got to give the people what they want. If you don't give it to us, just like Ms. Sherman just said, we going to take it." (ECF No. 61-1 at PageID 977–78.)

When the SCBOE announced at the meeting that the search for its new superintendent was being paused, activist Sarah Carpenter, who spoke earlier in the meeting, began loudly shouting for about sixty seconds, which prevented the meeting from continuing. (Id. at PageID 978.) Less than a minute later, Abraham and Sherman dropped audible panic alarms on the floor, causing them to emit a very loud and concussive noise. (ECF No. 58-1 at PageID 760.)[3] Security personnel retrieved the devices, attempted to silence them, and removed the devices

---

[3] Plaintiffs suggest that Abraham and Sherman dropped the alarms to protect themselves and out of a fear for their own personal safety. (ECF No. 58 at PageID 747.) Although immaterial for the purposes of ruling on this Motion, the video from the meeting does not support that assertion. Instead, it appears that the two unhurriedly rose from their seats and nonchalantly dropped the alarms as they made their ways out of the meeting room.

from the room and building. (Id.) Carpenter, whose interruption of the meeting lasted almost twice as long as the body alarm incident with Sherman and Abraham, was not punished. (ECF No. 61-1 at PageID 978.)

As Chief of Safety and Security for the SCBOE, Jackson is responsible for the safety of the public, employees, and anyone else who attends SCBOE meetings. (ECF No. 58-1 at PageID 760.) Based on Plaintiffs' conduct at the meeting, Jackson requested the issuance of Authorizations of Agency ("AoAs") to temporarily prohibit Plaintiffs from accessing SCBOE property. (Id. at PageID 760–61.) Jackson requested the AoAs because she believed Plaintiffs posed a significant safety risk to the SCBOE. (Id. at PageID 761–62.)

The issuance of the AoAs did not prevent Plaintiffs from engaging in other forms of communication with the SCBOE, as Rucker and Curry-Morris maintained direct communication with SCBOE members during the ban and Plaintiffs met with SCBOE member Sheleah Harris via Zoom to discuss the AoAs. (Id. at PageID 762.)

Plaintiffs eventually received letters from Jackson that outlined the reasons for the temporary bans. (Id. at PageID 762–63.) Abraham, Sherman, and Spriggs received text messages containing links to the letters. (Id. at PageID 763.) The letters discussed the incidents that led to the issuance of the AoAs and specifically mentioned the incident that occurred at the podium during Spriggs' allotted speaking time at the May 9 meeting. (Id.) The letter to Spriggs also included details of the Board policy she was alleged to have violated. (Id.)

Jackson's letters to Rucker, Spriggs, Abraham, and Sherman explained that the deployment of panic alarm devices was a serious issue and was the justification to restrict their access to SCBOE property. (Id. at PageID 764.) Jackson's letter to Curry-Morris stated that he prevented security personnel from reaching the podium and made a false police report, alleging

4

that security had assaulted him. (Id.) Each of Jackson's letters offered to have in-person discussions with the recipients. (Id. at PageID 764–65.)

On May 30, 2023, Abraham, Sherman, Spriggs, and Curry-Morris ignored the temporary ban from SCBOE property and came on to the property to try to attend a school board meeting, but were stopped at the metal detectors. (Id. at PageID 765.) Coming onto SCBOE property and attempting to enter the meeting was a violation of the AoAs. (Id.) Instead of seeking to arrest Plaintiffs, Jackson extended the length of their bans. (Id.) Jackson sent letters to each Plaintiff, dated May 31, 2023, that updated them as to the AoAs, and sent the letters via text message to Abraham, Curry-Morris, and Spriggs. (Id. at PageID 766.)

The only difference between the first set of letters Jackson sent and the letters dated May 31, was an additional paragraph specifying the updated length of the bans from SCBOE property. (Id.) Each of the Plaintiffs was banned an additional thirty days beyond their original ban. (Id.) Rucker's ban extended until June 11, 2023, Curry-Morris and Spriggs's ban extended until July 11, 2023, and Abraham and Sherman's until August 10, 2023. (Id. at PageID 766–67.) Jackson's letters included her email address and an invitation to meet to discuss the bans. (Id. at PageID 767.) The AoAs issued against all Plaintiffs have expired and they are permitted to freely access SCBOE property and attend school board meetings, as long as their behavior is not disruptive or a breach of safety. (Id. at PageID 768.)

Plaintiffs assert the following causes of action under 42 U.S.C. § 1983 in their Amended Complaint:

- All assert that their First Amendment right of access was infringed upon when they were prohibited from attending SCBOE meetings. (ECF No. 52 at PageID 513–14.)

5

- All assert that their procedural due process rights under the Fourteenth Amendment were violated when they were not provided any right to appeal or provided a mechanism to review their ban from the SCBOE meetings. (Id. at PageID 514–16.)

- All assert that their First Amendment right to freedom of expression was infringed upon when they were prevented from attending, recording, or speaking at SCBOE meetings, and when different rules were applied to them. (Id. at PageID 516–17.)

- Curry-Morris asserts that he was retaliated against for exercising his First Amendment rights when he was banned from SCBOE meetings for filing a police report alleging he was assaulted at the May 9 meeting. (Id. at PageID 517–18.)

- Spriggs and Rucker also assert that they were retaliated against for exercising their First Amendment rights as they merely talked with and associated with Abraham and Sherman, who set off the noisemakers. (Id. at PageID 518–19.)

Defendants assert that they are entitled to summary judgment as to all the claims. They argue that there were no First Amendment violations because Plaintiffs' bans from SCBOE property were content-neutral and narrowly tailored to serve a significant governmental interest, and they allowed Plaintiffs alternate methods of communication. (ECF No. 56-1 at PageID 543.) Defendants also contend that there is no evidence in the record that suggests the bans were based on Plaintiffs' critical viewpoints of SCBOE's search for a new superintendent. (Id.) Finally, Defendants assert that "no express policy, practice, or custom enforced by Defendant caused the alleged constitutional violations," which makes it impossible to establish so-called Monell liability. (Id. at PageID 543–44.) Ultimately, Defendants argue that, "[a]lthough framed as a

First Amendment case, in reality, this litigation is really about deplorable and disruptive conduct which is not protected by the Constitution." (ECF No. 61 at PageID 968.)[4]

Plaintiffs counter that there is a genuine issue of material fact as to whether Defendants violated their First Amendment rights. They assert that the restrictions put in place against them were content-based and that banning Plaintiffs from all MSCS property infringed on their First Amendment rights.

## ANALYSIS

I.  **Legal Standard**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the non-moving party's cause. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Although the court views all evidence and factual inferences in a light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

The movant has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to go

---

[4] Defendants suggest that Plaintiffs had ample channels of communication with the SCBOE available to them, but they do so in the context of whether the terms of the AoAs represented appropriate time, place, and manner restrictions on speech. The Motion for Summary Judgment does not address Count II of the Amended Complaint, which asserts that Plaintiffs' procedural due process rights under the Fourteenth Amendment were violated when they were not provided any right to appeal or provided a mechanism to review their ban from the SCBOE meetings. To the extent Defendants seek summary judgment as to Count II, their motion is **DENIED**.

7

beyond the pleadings and designate specific facts showing there is a genuine issue for trial. Id. at 324 (quotations omitted). Ultimately, in evaluating the appropriateness of summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

**II.     Claims Under § 1983**

Plaintiffs allege several § 1983 claims, based on different constitutional provisions. "Section 1983 does not create substantive rights, but instead provides 'a method for vindicating federal rights elsewhere conferred.'" Schalk v. City of Memphis, Tennessee, No. 14-CV-2220-SHL-tmp, 2015 WL 11019255, at *7 (W.D. Tenn. Aug. 13, 2015) (quoting Albright v. Oliver, 510 U.S. 266, 271 (1994)). To assert a claim under § 1983, a plaintiff must prove he "was deprived of a right 'secured by the Constitution or laws of the United States' and that such deprivation was 'caused by a person acting under color of state law.'" Littler v. Ohio Ass'n of Pub. Sch. Emps., 88 F.4th 1176, 1180 (6th Cir. 2023) (quoting Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003)).

At the same time, "[t]o prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). A plaintiff may take "at least four avenues . . . to prove the existence of a municipality's illegal policy or custom." Id. (citing Monell, 436 U.S. at 694). Those include "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."

8

Id. (citing Monell, 436 U.S. at 694.) Each constitutional claim at issue in Defendants' Motion is considered below.

    A.  First Amendment Claims

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163 (2015) (citing R.A.V. v. St. Paul, 505 U.S. 377, 395 (1992)). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." Id. (citations omitted).

However, "[t]he right to free speech is not absolute, especially when a would-be speaker seeks access to government property as a platform for his speech." Lowery v. Jefferson Cnty. Bd. of Educ., 586 F.3d 427, 432 (6th Cir. 2009). School board meetings are considered "designated" and "limited" public fora. Id. They are not traditional public fora, like parks and streets, where the government's regulatory powers are at their weakest. Id. (citing Hague v. Comm. for Indus. Org., 307 U.S. 496, 515 (1939)). Nor are they nonpublic fora, like military bases, where the Government has broad discretion to regulate speech. Id. (citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 806 (1985)). In a limited public forum, "the State is not required to . . . allow persons to engage in every type of speech," but instead "may regulate the time, place and manner of speech so long as the regulation is (1) content-neutral, (2) narrowly tailored to serve a significant governmental interest, and (3) leaves open ample alternative channels for communication of the information." Id. (citations and quotations omitted) (cleaned up).

9

Defendants contend that the AoAs were content neutral because they were issued after Plaintiffs engaged in disruptive behavior at the May 9 meeting and "did **not** restrict in any way to whom or what topics Plaintiffs could communicate to SCBOE board members or other SCBOE personnel." (ECF No. 56-1 at PageID 555.) They assert that the AoAs were narrowly tailored to serve a substantial governmental interest, namely maintaining safety and order during school board meetings. (Id. at PageID 555–57.) Finally, they contend that, although Plaintiffs were temporarily prevented from accessing SCBOE property, Plaintiffs had ample means of communicating with the SCBOE's members, and Plaintiffs did so while the AoAs were in place, and, although Jackson extended invitations to meet with her to discuss them, none of the Plaintiffs took her up on the offer. (Id. at PageID 557–58.) Because the applicable facts as to Curry-Morris are different than the other Plaintiffs, his claim is considered first below, followed by the others.

    1. *There is a Genuine Issue of Material Fact as to Whether Defendants' Actions Against Curry-Morris Constituted Content-Based Infringements on his Speech*

The AoA issued to Curry-Morris informed him that, during the May 9 meeting, he left his "seat and joined a group at the podium that became loud, argumentative, and confrontational when the Board Chair requested the next speaker. This raised safety concerns, causing security to intervene and restore order." (ECF No. 56-16 at 708.) The AoA also accused him of filing a false police report. (Id. at PageID 709.)

In her deposition, Jackson explained that she viewed Curry-Morris's statements at the podium during the May 9 meeting as threats of violence. (ECF No. 58-7 at PageID 900–03.) Curry-Morris told the SCBOE at the meeting, "[s]o, look at yourselves and look at the people. Because you've got to give the people what they want. If you don't give it to us, just like Ms. Sherman just said, we going to take it." (ECF No. 61-1 at PageID 977–78.) Jackson also stated

at the preliminary injunction hearing that her "officers told [her] he made threats to them as he was leaving." (ECF No. 37 at PageID 324.) Plaintiffs assert that there is a question of fact as to whether the AoA issued to Curry-Morris was a punishment based on the content of his speech, and was thus unconstitutional.

Plaintiffs acknowledge that "objective threats of violence contribute nothing to public discourse and enjoy no First Amendment protection." (ECF No. 58 at PageID 742 (citing R.A.V. v. City of St. Paul, 505 U.S. 377, 382–83 (1992)). However, Plaintiffs assert that Curry-Morris's speech amounted to political hyperbole, which is entitled to full constitutional protection. (Id. at PageID 742–43 (citing Watts v. United States, 394 U.S. 705, 707 (1969).) In any event, Plaintiffs contend that a genuine issue of material fact exists as to whether Curry-Morris's ban from SCBOE meetings and property stemmed from the content of his speech, and that such a ban was not narrowly tailored to serve a compelling governmental interest.

There is an issue of material fact as to whether the AoA was issued against Curry-Morris based on the content of his protected speech at the May 9 meeting. The statements "[b]ecause you've got to give the people what they want" and "[i]f you don't give it to us, just like Ms. Sherman just said, we going to take it," do not, on their face, amount to threats that exist outside the realm of First Amendment protection. And, even if they were, it cannot be said as a matter of law that the restrictions placed upon Curry-Morris through the AoA were narrowly tailored to serve a compelling governmental interest. Curry-Morris was banished from all MSCS property, which prevented him from going to work at his job as a transportation provider for the schools, picking up his children from school, or attending his nephew's eighth grade graduation. (ECF No. 58-2 at PageID 789–90.) As Defendants suggest, the initial decision to remove a person from a board meeting may be considered narrowly tailored to promote public safety and order.

11

(ECF No. 56-1 at PageID 554 (citing Sandefur v. Vill. of Hanover Park, Ill., 862 F. Supp. 2d 840, 848 (N.D. Ill. 2012) (finding the decision to remove a very animated person with a concealed firearm from a village board meeting to be narrowly tailored, where the defendants were unaware he was a law enforcement officer)). However, in this case, Curry-Morris left the May 9 meeting on his own volition and his subsequent ban from all MSCS property cannot be said, as a matter of law, to be narrowly tailored.[5]

Given the foregoing, Defendants' Motion for Summary Judgment as to Curry-Morris's claims is **DENIED**.

2. *There is a Genuine Issue of Material Fact as to Whether Defendants' Actions Against the Remaining Defendants Were Valid Time, Place, and Manner Restrictions*

Defendants' arguments for summary judgment as to the claims of the remaining Defendants echo those they make regarding Curry-Morris. That is, they assert that the AoAs were content-neutral, as they were prompted by concerns about safety. They argue that the AoAs were narrowly tailored because they banned Plaintiffs from the SCBOE and MSCS properties for brief periods of time ranging from thirty to ninety days. And they contend that the AoAs did not otherwise impose restrictions upon any information Plaintiffs could communicate

---

[5] Defendants also assert that, "[t]he fact that the AOAs were narrowly tailored and served a significant governmental interest demonstrates the claim of retaliation by Plaintiff Curry-Morris is meritless." (ECF No. 56-1 at PageID 556.) Defendants argue that the video of the May 9 board meeting conclusively demonstrates that Curry-Morris filed a false police report when he claimed that he was assaulted by SCBOE police officers, and Defendants imply that the police report was not made in good faith. (Id.) The record does not support that conclusion and, nevertheless, the same previously identified questions of material fact exist as to Curry-Morris's claim for retaliation. Therefore, summary judgment is **DENIED** as to Curry-Morris's retaliation claim.
  Defendants also do not directly address Rucker and Spriggs's retaliation claims under the First Amendment. Absent any such argument, and because Rucker and Spriggs's First Amendment claims survive the Motion for Summary Judgment as described herein, summary judgment is **DENIED** as to those claims.

to the SCBOE, demonstrating there were ample alternative channels for communication. Plaintiffs contend that, even when intermediate scrutiny is applied, there is a genuine issue of material fact as to whether Defendants infringed on Plaintiffs' constitutional rights, because a blanket ban from SCBOE meetings, and all MSCS property, including properties where the public is routinely permitted to gather, even for a limited duration, is not narrowly tailored and is "categorically unconstitutional." (ECF No. 58 at PageID 746.)

To be considered narrowly tailored, "[a] restriction must not burden 'substantially more speech than necessary to achieve the [government]'s asserted interests.'" Lexington H-L Servs., Inc. v. Lexington-Fayette Urb. Cnty. Gov't, 879 F.3d 224, 229 (6th Cir. 2018) (quoting McCullen v. Coakley, 573 U.S. 464, 490 (2014)). Still, "the regulation 'need not be the least restrictive or least intrusive means' of promoting a substantial governmental interest, nor is there any 'stringent duty of calibration.'" Id. (quoting Prime Media, Inc. v. City of Brentwood, 398 F.3d 814, 823 (6th Cir. 2005)). Ultimately, "the requirement of narrow tailoring is satisfied so long as the . . . substantial government interest would be achieved less effectively absent the regulation." Id. (citation omitted) (cleaned up).

In its Order Denying Plaintiffs' Motion for Preliminary Injunction, the Court explained that "future, or prospective bans are not categorically prohibited" and that "a temporary prospective exclusion may be justified." (ECF No. 38 at PageID 410.) At the same time, though, the Sixth Circuit and other courts "have invalidated laws that prohibit future expressive activity in retaliation for past unlawful conduct." Polaris Amphitheater Concerts, Inc. v. City of Westerville, 267 F.3d 503, 507 (6th Cir. 2001). The SCBOE has a significant interest in the orderly and efficient conduct of its business, including preventing the disruption of public meetings. See Hansen v. Westerville City Sch. Dist. Bd. of Educ., 43 F.3d 1472, 1994 WL

622153 (6th Cir. 1994) (table). However, there remains a genuine issue of material fact as to whether the SCBOE's ban was justified. Part of that is based upon what Plaintiffs—and the record—have demonstrated is a question of inconsistent application of the SCBOE's standards.

To be sure, there is a distinction between interrupting a school board meeting by dropping body alarms, as Abraham and Sherman did, and shouting loudly for about a minute, as activist Sarah Carpenter did at the same meeting. That distinction is a matter of degree and not of kind, however. The sort of disruption attributed to Spriggs and the other Plaintiffs who joined her at the podium during the meeting, though it lasted longer than Abraham, Sherman, and Carpenter's interruptions, was arguably something less disruptive, and less severe. But the fact that Carpenter appears to have avoided receiving an AoA for similarly disruptive actions she took at the very same meeting that prompted Plaintiffs' receipt of the AoAs, at least raises the question as to whether the bans placed upon Plaintiffs burdened substantially more speech than necessary to achieve the SCBOE's asserted interests. See Lexington H-L Servs., 879 F.3d at 229. Although the SCBOE was not required to take the least restrictive or least intrusive means when implementing the time, place, and manner restrictions it placed on Plaintiffs (see id.), the expansive gap between, on the one hand, taking no action against Carpenter, and, on the other hand, banning Plaintiffs from all MSCS property, even for a limited time, illustrates that a genuine issue of material fact exists as to whether Plaintiffs' bans were narrowly tailored.

As a result, Defendants' Motion for Summary Judgment as to the First Amendment claims against all other Plaintiffs is **DENIED**.

B.  Monell Liability

Defendants assert that Plaintiffs have failed to establish Monell liability, because there is no genuine issue of material fact as to whether SCBOE has a policy, custom, or practice that

resulted in the constitutional violations. Defendants argue "the SCBOE's policies governing school board meetings and the conduct of visitors on SCBOE property are content-neutral." (ECF No. 56-1 at PageID 558.) They also contend that Plaintiffs can point to no "'practice or custom'" that satisfies Monell because . . . members of the public, including four (4) out of the (5) Plaintiffs, were allowed to voice concerns and opinions critical of the SCBOE unimpeded." (Id.) The policy at issue, according to Plaintiffs, is not the one governing who can speak at board meetings, but instead the safety policies that led to the implementation of the bans. They argue that, "[i]n other words, the record clearly establishes that Chief Jackson carried out the policy of SCBoE in instituting the bans, the SCBoE [k]new about it, and endorsed it." (ECF No. 58 at PageID 749.)

Defendants do not dispute that Jackson implements the safety policies for MSCS and that she was carrying out MSCS policies when she issued the AoAs and banned Plaintiffs from MSCS properties. Based on the actions taken by Jackson and endorsed by the SCBOE, a genuine issue of material fact exists as to both whether the SCBOE's official agency policies were unlawful and whether actions taken by officials with final decision-making authority were as well.[6] Because those questions exist, Defendants may be subject to liability under Monell. The Motion for Summary Judgment based on Monell is also **DENIED**.

---

[6] There is also the question as to whether the SCBOE's policies, even if they are content-neutral on their face, can nevertheless constitute potential constitutional violations through their means of execution. In Polaris, the court evaluated a noise ordinance and determined that it was content-neutral and did not permit unfettered official discretion in its enforcement. However, in that context, the court nevertheless explained that, "when a regulation fails to place appropriate limits on the discretion of public officials to administer the law in a manner that is abusive of speech, the result should be no different than if the law had brazenly set out to discriminate on the basis of content. At stake is the risk that in the absence of 'narrowly drawn, reasonable and definite standards for the officials to follow,' the law invites opportunities for the unconstitutional suppression of speech." Polaris, 267 F.3d at 509 (6th Cir. 2001) (quoting

C. <u>Claims Against Jackson in her Official Capacity</u>

Finally, Defendants seek summary judgment for the claims against Jackson in her official capacity as Chief of Safety and Security for the Shelby County Board of Education, arguing that the claims against her are duplicative of the claims against SCBOE. (ECF No. 56-1.) Plaintiffs counter that when a party is charged with implementation of a discretionary policy, "the Sixth Circuit has permitted cases against individuals in their official capacity to move forward." (ECF No. 58 at PageID 750.)

Plaintiffs are mistaken and their reliance on <u>Leach v. Shelby County Sheriff</u>, 891 F.2d 1241 (6th Cir. 1989), is misplaced. In that case, the court explained that, consistent with Defendants' position, "[a] suit against an individual 'in his official capacity' has been held to be essentially a suit directly against the local government unit and can result in that unit's liability to respond to the injured party for his injuries." <u>Leach</u>, 891 F.2d at 1245. The court concluded that the "suit against the Mayor and the Sheriff of Shelby County in their official capacities is, therefore, essentially and for all purposes, a suit against the County itself." <u>Leach</u>, 891 F.2d at 1245–46; <u>see</u> <u>also</u> <u>Grace v. City of Ripley, Tennessee</u>, No. 2:16-cv-02395-JPM-dkv, 2017 WL 835206, at *6 (W.D. Tenn. Mar. 2, 2017) (collecting cases that stand for the proposition that, "when a complaint asserts a claim against an officer or employee of a governmental entity, in his or her official capacity, and against the governmental entity itself, a district court may dismiss the official-capacity claim"); <u>Faith Baptist Church v. Waterford Twp.</u>, 522 F. App'x 322, 327 (6th Cir. 2013) (finding a claim against a township's deputy police chief in his official capacity "superfluous" when the township itself was also sued); <u>Kraemer v. Luttrell</u>, 189 F. App'x 361,

---

<u>Niemotko v. Maryland</u>, 340 U.S. 268, 271 (1951)). Jackson was implementing SCBOE's policies and not enforcing laws, but similar concerns are present here.

16

366 (6th Cir. 2006) ("[s]uing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself").

Contrary to Plaintiffs' argument, the claims against Jackson in her official capacity are equivalent to claims against the SCBOE.  Therefore, the Motion for Summary Judgment is **GRANTED** as to the claims against Jackson in her official capacity.

## CONCLUSION

Consistent with the foregoing, Defendants' Motion for Summary Judgment is **GRANTED** as to the claims against Jackson in her official capacity, and **DENIED** as to all the remaining claims.

**IT IS SO ORDERED,** this 10th day of October, 2024.

s/ Sheryl H. Lipman<br>
SHERYL H. LIPMAN<br>
CHIEF UNITED STATES DISTRICT JUDGE